Good morning, Your Honors. Good morning. May it please the Court, my name is Sung Lee from the Federal District Defender's Office for the Eastern District of California for the Appellant Scott v. Rendelman. I hope to reserve three minutes for rebuttal today. Your Honor, during my time today, I'd like to make three points. First, that in Section 871 cases, of which this is one,  willfully made a threat against the President. And willfulness is determined by asking whether a reasonable person in the defendant's position would have reasonably foreseen that the intended recipients of the communication would interpret them as a serious threat. And under this rule, my second point is that the trial court erred in permitting the testimony of Ms. Elizabeth Eck,  that she, upon reading them, considered them to be a serious threat. And this was clearly erroneous under United States v. Hanna, which I'll discuss further later in my argument. My third and final point would be that under the same rule, the trial court also erred in excluding all of Mr. Rendelman's rebuttal evidence, that is, witness testimony from the intended recipients of these letters, that they would not have considered them to be serious threats and that they would have properly interpreted them to be expressions of protest, and also documentary evidence in the form of Secret Service documents showing that the agency did not consider Mr. Rendelman to have actually expressed serious threats against the President. Now, by way of a brief background on this case, Mr. Rendelman has been writing letters of this sort since 1986 when he was in custody in a Maryland state facility on a conviction for embezzlement. During this time, Mr. Rendelman was unfortunately raped, and it was the pain and trauma of this event that caused Mr. Rendelman to commence this crusade of protesting against the system of incarceration. His message has basically always been that incarceration does not rehabilitate its subjects, but rather turns them into worse human beings. So the key feature of Mr. Rendelman's defense at trial was to show that he did not – that it was his reasonable expectation that the persons to whom he addressed these letters would not interpret them to be serious threats and that they would not alarm anybody, that the intended recipients would read the letters and think, oh, Mr. Rendelman is simply making his protest again. Now, at trial, Ms. Elizabeth Eck was allowed to testify that she intercepted the letters. She was not the intended recipient of these letters. She read them, and upon reading them, she considered them to be a serious threat. Well, it's not exactly what she testified to. She was asked whether she took the letters seriously, and she said yes. And then she was asked, including the threat against the President, and she said yes. So she didn't express an opinion that the threats were serious threats or that a reasonable listener would have interpreted them that way. She said she took the letters seriously as a basis for what she did, which was to turn them over to the powers that be. So in a number of respects, that differs significantly from Hannah, where you had a parade of experts opining on the fact that ambiguous communications were, in fact, threats, which Eck did not do. Well, Your Honor, I would argue that Ms. Eck's testimony is that she, quote, took the letters seriously, had the same effect of saying that she considered them to be a serious threat. But in other words, she did not see that the letters were a letter expression of protest. And in fact, she had no foundation for making any kind of an opinion on these letters because she didn't have the proper context in which to say what they were. All of which would be explained and was explained. How do you mean, Your Honor? Well, I mean, he, Rendleman was not precluded from putting on evidence that this was protest and that he'd written a zillion of these things. And he certainly didn't think anybody would take them as anything other than a protest. Certainly, Your Honor, Mr. Rendleman was permitted to testify on his own behalf. However, he was not permitted to present the evidence or the testimony of Judge Jones and Captain Hines. Well, to one question, which was how would you have reacted if you had gotten it, which is purely speculative. But he was able. He was not precluded from asking the wardens and the judge about their past experience with him. That's true. They were allowed to testify about their past experience with him. But I believe the question that was not permitted, which, as you articulated, was if you had received the letters, would you have taken them seriously, was critical to Mr. Rendleman's defense. Because that directly goes to the question of whether Mr. Rendleman's reasonable expectation was, in fact, reasonable, that they would not have taken them seriously. And so Ms. Eck's testimony that she did take him seriously was, in essence, left uncontroverted in the eyes of the jury. And that was the only basis. That was the basis for the verdict. You see, that just points out she didn't know any of the context. Even if it was error, which I'm not sure it was, but even for error, what does it make? I mean, it was a throwaway line. As you say, she didn't know anything. So that was obvious, wasn't it? I'm not sure if that was obvious to the jury, Your Honor. I mean, this was a law enforcement officer, and I think jurors tend to accord them a certain amount of credibility. It wasn't the head of the FBI. Granted, Your Honor. Nevertheless, I believe that the weight of her evidence was significant at trial because Mr. Rendleman wasn't allowed to present his rebuttal evidence from Judge Jones and Captain Hines. And I also would like to point to some language in case law that says that, quote, whether the defendant's words constituted a true threat must be determined in light of the entire factual context of the defendant's statements. Such contextual evidence includes the reaction of the intended recipients. And this is from the United States v. Watts. It's a Greenport case, Mitchell and Hanna from this circuit. And I believe that at trial, Mr. Rendleman was not allowed to present the entire factual context by the court's denial of his questions to Judge Jones and Captain Hines, and as well going to the Secret Service documents. I have three minutes for rebuttal, Your Honor, if you have any further questions. Sure. Thank you. Okay. Mr. Sprague. May it please the Court. Good morning, Your Honor. Stoke Sprague from the U.S. Attorney's Office. On behalf of the government, and I was trial counsel in this case, I have very little to add to my briefs on this matter. I would, however, like to respond to a couple of points that Mr. Lee made. First of all, Mr. Lee in his oral argument this morning and in his two briefs in this case made repeated references to the case law, saying that it holds that intended recipients, the reaction of intended recipients. In fact, he just cited from Watts purportedly a quote saying the intended recipient's reaction is pertinent in 876 cases. The government submits that is not the law. The intended recipient's is not quoted in the case law. It's not in the statute. It's not in the jury instructions. The closest that any of the cases come to that is reaction of, say, the listeners, for example, which is completely different from reaction of an intended but not actual recipient. Mr. Lee criticized the government for being inconsistent in its brief when he said that Officer Eck's testimony, the government says that that was somehow relevant, but that Judge Jones and Captain Hines' testimony was not relevant, and he says that's inconsistent. Well, it's not. Officer Eck actually received this letter. She actually read the letter in the context in which it was written, had a reaction to it. Judge Jones and Captain Hines never received letters in this case. They could only testify based on, I think, they objected on about six grounds to the questions that were asked of Captain Hines and Judge Jones. And the judge, district court judge, sustained speculation. It was pure speculation. The question was four or five lines long with respect to each of them. But I did want to clarify the government's position on this purported phrase of intended recipients, which I think finds no basis in statute, case laws, or instructions. Mr. Lee referred to Rendleman's rebuttal evidence of the Secret Service documents. I'm not sure if that was somehow intended to say that Mr. Rendleman was entitled to some type of, as defendant was entitled to a rebuttal case, the fact of the matter, he tried to reopen his case to submit documents that the judge had already, pre-trial, declined to submit. The judge gave about a one-page, single-spaced line of reasoning why he did, why he declined Mr. Rendleman's offer to reopen the case and to submit those documents, which I reprinted in my brief, which the district court, as an aside, made me promise to do at the time. Mr. Lee also mentioned that Judge Jones and Ms. Bagley's reaction would have been, oh, this is simply Mr. Rendleman making protests again. I think that was his quote as I wrote down. That has no basis whatsoever. Judge Jones was the judge and Ms. Bagley was the DA who prosecuted Mr. Rendleman for substantially similar letters before this, and it is in the record that Judge Jones declined to give Mr. Rendleman the minimum term he could have given him. In fact, he gave him the midterm sentence based on that prior conduct, finding those letters to be a threat. And as the court pointed out with respect to Hanna, I think this case shows substantial differences from Hanna, where you had over 150 years of experience, three Secret Service agents and a police commander testifying about letters they had never received, and that's totally different from someone who had been a prison guard for two and a half years testifying about a letter she received in the context in which it was written. Hanna, furthermore, I think undermines the defense case in the sense that Hanna mentions at the beginning that the recipients of those letters actually testified in the case, which is like the government put on here, Ms. X, she actually testified. There was no problem with that in Hanna, but the defense seems to argue now that there is. And the – and Hanna points out that the context of the statements is important, including the surrounding events and the reaction of listeners. That's right out of Hanna in the government's midst. That's exactly right. The contents of the statements and the reaction of the listener, or in this case the reader, is relevant. And unless the Court – I have a – let me ask you a few questions about the motion to suppress. Yes, Your Honor. With the exception of letter – I think it's letter three to Judge – I think that's the one that was addressed to Judge Jones. Yes, Your Honor, it is. The other four letters were marked confidential. And under the prison regulations, it seems as though – although he didn't seal them in front of the prison guard or officials or whatever. Under the regulations, it seems as though they should have been returned to him for him to do whatever he would have done with them at that point. The letter to Judge Jones was not marked confidential, as I understand it. That's correct, Your Honor. It was not. Okay. But with respect to the four that were, the argument that's made in the briefs that, well, with respect to his motion to suppress, that even if there was some sort of violation of his privacy rights, that they would have been inevitably discovered in any event. What's the factual predicate for that? Well, Your Honor, the – Was there a parallel investigation going along with respect to him, or was it just in the normal course of events these letters would have? If the recipient had actually received them, the recipients would have most likely, in light of his past history, would have turned these over to appropriate officials. Is that sort of the inevitable discovery? I believe that's a fair characterization of it. Mr. Rendleman was in administrative segregation for exactly this conduct at the time he wrote these letters. The letter, certainly, to President Clinton, Mr. Rendleman concedes that the Secret Service reads all threats against the President, and the government submits that would not just be a letter addressed to the President, but the letters that went, for example, to Ms. Bagley and Judge Jones, who had been involved in a prior prosecution of Mr. Rendleman. And the notion that they just would have ignored these letters and thrown them out, I think there's no basis for that. I think it's unrealistic. Below, in the district court, Mr. Rendleman argued, in response to the inevitable discovery argument that we had before trial, he said, well, they should have been returned, and then I could have reflected on my decision of whether or not to really mail these. Now his argument is different than that. Even if they would have been mailed out, he doesn't seem to call into question that they would have gone out eventually under some procedure. But we can't show that they would have gotten to government officials. I think that's wrong. The standard is we only have to show by preponderance that it would have gotten to the government. In some sense, at least three letters were addressed to the government. And also, I think that there were, just to mention briefly, the court's predicate or premise to the question, Mr. Rendleman claims, I think, that four of them were confidential. I'm not so sure the record reflects that. I know that the letter to President Clinton was marked confidential, and the letter to Ms. Bagley was marked confidential. The record supports that. I don't think it does with respect to the other three. Okay. Thank you. Okay. Mr. Lee. Thank you, Your Honors. I'd like to quickly begin by addressing Mr. Sprigg's argument that law does not reflect that the it is the reactions of the intended recipients, and not some random interceptors that is relevant to the question of an intent to threat. And I believe in Hanna there is language. Hanna specifically held that because the defendant in that case was not communicating to the law enforcement officers, their reactions had little bearing on the question of true intent. And I would quote here, what a reasonable person in Hanna's position would have foreseen with regard to the persons with whom he communicated cannot be determined by the reactions of unforeseeable recipients. It simply defies logic to say that somebody who randomly picks up the defendant's letter can say that the letter is a true threat and that the defendant should have known I was going to pick up the letter and interpret it this way. So I would leave that issue at that. I would also like to address Mr. Sprigg's argument regarding Hanna's effect on the admissibility of the Secret Service documents. The distinction between Hanna, between the evidence of the Secret Service agents in Hanna, as opposed to what Rendleman proffered at his trial, is that Rendleman was essentially directing his letter, which was addressed to President Clinton, to the Secret Service. In other words, the Secret Service were the intended recipients of Mr. Rendleman's communications. They had a long history of communicating. Rendleman had been sending these types of letters to the White House for many years. The Secret Service had a lengthy file showing that they did not view the letters to be serious threats and that they understood clearly that Mr. Rendleman was simply complaining about the system of incarceration. So that, I believe, distinguishes Hanna on that point. Now, on Judge Pius's question regarding inevitable discovery, I think the key point to recognize here is that Mr. Rendleman was not addressing these letters to the government. He was addressing them to people. Who do you think the assistant district attorney is? I mean, who would she even have to turn the letter over to? She's it. That's true, Your Honor. But the district attorney further has discretion to prosecute or to decline prosecution. Of course. We're not talking about whether the inevitable discovery doctrine doesn't turn upon whether some official would decide to prosecute. It turns on whether they would have discovered it. And this is the person to whom, if it had been picked up on the street, it would have been turned over. I realize the case is more difficult with regard to District Attorney Bagley. However, I believe the case is stronger with regard to Judge Jones, Captain Hines, and Warden Lappin. There is no evidence that these individuals would have forwarded the letters on to law enforcement officers. In fact, I believe the facts show that the opposite assumption is more reasonable, that they would have read the letters and understood that Mr. Rendleman was not saying anything that was threatening. Okay. Let me ask you a slightly different question, and that is that the letter three clearly was not marked confidential. Yes, Your Honor. It was treated as regular mail. Yes, Your Honor. What difference, then, does it make on the other four counts? Did it matter on sentencing? Or were they grouped? Your Honor, I can't answer the question with regard to its effect on sentencing. Or anything else? Well, on the question of whether the letter should have been suppressed, I believe the case is weaker on that letter because it wasn't marked confidential. I believe the regulations, we can see that the regulations. I understand you're saying that. But, I mean, even if the other four should be suppressed, I mean, so what? Your Honor, Mr. Rendleman, it would make a big difference to Mr. Rendleman. Okay. Thank you very much. Thank you. The matter just argued will be submitted.
judges: Leavy, Rymer, Paez